[Cite as *State v. Smith*, 2020-Ohio-5310.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | Case No. 2020CA00065 |
| | : | |
| CHRISTIN SHAMAR SMITH | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Stark County Court of
                             Common Pleas, Case No. 2019CR2033

JUDGMENT:                    AFFIRMED

DATE OF JUDGMENT ENTRY:      November 16, 2020

APPEARANCES:

For Plaintiff-Appellee:                    For Defendant-Appellant:

JOHN D. FERRERO, JR.                       BERNARD L. HUNT
STARK CO. PROSECUTOR                       2395 McGinty Road N.W.
KATHLEEN O. TATARSKY                       North Canton, OH 44720
110 Central Plaza South, Ste. 510
Canton, OH 44702

*Delaney, J.*

{¶1} Appellant Christin Shamar Smith appeals from the February 24, 2020 Judgment Entry of the Stark County Court of Common Pleas. Appellee is the state of Ohio.

**FACTS AND PROCEDURAL HISTORY**

{¶2} On August 27, 2019, Tevonn Bowers received a text message from Marcia Harris, the mother of his two daughters. Harris asked him to babysit his daughters and stated that if he did not, she would ask Defendant-Appellant Christin Smith to watch them. Bowers replied, saying he did not want the appellant around his children. Bowers then called his brother, Markelle, to pick him up and take him to the Harris residence.

{¶3} Both brothers have concealed carry license (C.C.W.) and were carrying their weapons when they arrived at the house. Bowers then instructed his brother to stay in the vehicle as he approached the porch where the appellant and Harris sat.

{¶4} At trial, Bowers testified that after approximately five seconds of conversation with Harris, the appellant came down off the porch, and hit him on the chin. According to Bowers, the appellant then hit Bowers again, in the head with his gun, which went off upon contact. Bowers then grabbed the appellant's arm and gun and held him. Bowers's brother emerged from the vehicle, and Bowers let the appellant go. Bowers then drew his own gun.

{¶5} The appellant also testified, but instead claimed Bowers pulled out his own gun which fell and also threw the first punch. The appellant admitted to carrying a firearm but denied that the he used his weapon to strike Bowers. The appellant also admitted his gun went off as they fought.

{¶6} Harris's brother, Corlin Osteen, then came out from the garage after hearing the firearm go off. Osteen questioned Bowers as to why he would bring a gun to pick up his children and told both Bowers and the appellant to leave.

{¶7} Appellant then ran to the back of the house. Bowers and his brother also left the scene temporarily, but returned to retrieve his hat which he left behind. By the time Bowers returned, the police had arrived in response to a Shot Spotter Notice.

{¶8} Officer Kyle Slone arrived at the scene and then spoke to Bowers. Officer Slone contacted Brianna Parsons, the appellant's Parole Officer, in an effort to locate him. Parsons, who had been supervising the appellant for four months for previous convictions, testified at trial that the appellant's GPS monitor bracelet was cut off and found at fourth and Lloyd Court. No shell casings were found at the scene.

{¶9} Bowers did not leave the scene with his children. Bowers also did not sustain injuries or receive treatment after being struck by the appellant.

{¶10} On November 13, 2019, the appellant was indicted upon one count of Felonious Assault pursuant to R.C. 2903.11(A)(2)(D)(1)(A), a felony of the second degree [Count I] and one count of Having Weapons While Under Disability pursuant to 2923.13(A)(2)(B), a felony of the third degree [Count II]. Count I was accompanied by a firearm specification pursuant to R.C. 2941.145(A). Appellant entered pleas of not guilty and the matter proceeded to trial by jury. The trial court found the appellant guilty upon Count II and not guilty upon Count I. Appellant was sentenced to thirty-six months in prison. He now appeals.

{¶11} Appellant raises two assignments of error:

{¶12} "I.    THE TRIAL COURT'S FINDING OF GUILTY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE."

{¶13} "II.    THE DEFENDANT WAS DENIED HIS EFFECTIVE ASSISTANCE OF COUNSEL."

**ANALYSIS**

I.

{¶14} In his first assignment of error, the appellant argues the evidence introduced at trial by the State was of a limited nature and not sufficient to prove guilt in regard to the verdict of Having Weapons While Under Disability. We disagree.

{¶15} The Ohio Supreme Court set forth the standard of review for when a claim of insufficiency of evidence is made in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991). The Ohio Supreme Court held:

An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* at paragraph two of the syllabus.

{¶16} The appellant argues the State's evidence at trial was insufficient because no weapon was produced, no shell casings were found, and there is conflicting testimony from Bowers's brother.

{¶17} When considering such a claim, a reviewing court must "examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. *State v. Thompkins,* 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541 (1997), citing *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983).

{¶18} According to R.C. 2923.13, no person under disability, unless relieved from disability under operation of law or legal process shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance. Having Weapons While Under Disability includes those who are convicted of a felony offense of violence.

{¶19} The evidence at trial demonstrated that appellant had a prior conviction for felonious assault, in addition to five prior felonies.  Appellant was on parole at the time of the incident and was just released from prison in April,  2019.

{¶20} In this matter, the appellant does not argue he had been relieved from disability under operation of law, but instead asserts no weapon was introduced at trial that belonged to him. However, at trial the appellant admitted to having a weapon during the incident. An admission to possessing a gun while having a prior conviction of felonious assault would convince any trier of fact the essential elements of Having Weapons Under Disability have been met.

{¶21} After having examined the entire record in the light most favorable to the prosecution, including the appellant's admission to possessing a weapon in violation of the law, we cannot conclude the trier of fact lost their way and created a manifest miscarriage of justice when asserting the appellant was guilty of Having Weapons While Under Disability.

II.

{¶22} In his second assignment of error, the appellant argues the performance of his trial counsel was deficient and resulted in his prejudice because his Parole Officer, Briana Parsons, was able to testify against him at trial and because Marcia Harris, his former girlfriend, was not called as a witness. Again, we disagree.

{¶23} To succeed on a claim for ineffective assistance of counsel, a defendant must satisfy the two-prong test set out in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, the defendant must show the trial counsel acted incompetently. Second, the defendant must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

{¶24} In this instance, the appellant assumes the testimony offered at trial by his parole officer, Brianna Parsons, regarding his prior convictions, and his cut-off and discarded GPS ankle monitor prejudiced the jury. His trial counsel also did not take the opportunity to cross-examine Parsons. The appellant claims this error may have led to the appellant's decision to testify to bolster his case.

{¶25} While it may be true that the appellant's counsel errored by failing to prevent Parson's testimony, the defense presents no evidence that having done so would have

yielded a different outcome at trial. The court instructed the jury to disregard Parsons's testimony regarding the bracelet when considering the two charges against the defendant, and there is no evidence presented to indicate the jury failed to follow this instruction in a way that prejudiced him.

{¶26} The appellant also asserts he was prejudiced by the failure of his counsel to call Marcia Harris to testify on his behalf, stating it was below the objective acceptable standards under *State v. Lytle,* 48 Ohio St. 2d 391, 358 N.E. 2d 623 (1976).

{¶27} Again, there is no reasoning provided as to why calling Harris as a witness would have resulted in a different ruling by the jury. The defense counsel did in fact call Harris's brother as a witness, and as a witness he did provide testimony that could have led a jury to conclude felonious assault had not been committed. There is no argument to the contrary that testimony from Harris would have led to a different outcome under *Strickland v. Washington.*

## CONCLUSION

{¶28} Appellant's first and second assignments of error are overruled. The judgment of the Stark County Court of Common Pleas is affirmed.

By:  Delaney, J.,

Hoffman, P.J. and

Baldwin, J., concur.